UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SCOTT MACINTYRE,

     Plaintiff,

v.                               Case No: 6:24-cv-988-JSS-RMN

CITY OF PALM BAY, OFFICER
JUAN CASTRO ESCANDON,
OFFICER COLE MCDONALD, and
OFFICER DERRICK MITCHELL,

     Defendants.

_____/

**<u>ORDER</u>**

Defendants Juan Castro Escandon, Cole McDonald, and Derrick Mitchell move to dismiss the complaint. (Dkts. 20, 37.) Plaintiff, Scott MacIntyre, opposes the motions. (Dkts. 23, 38.) Upon consideration, for the reasons outlined below, the motions are granted.

**BACKGROUND**[1]

On the evening of December 2, 2022, Plaintiff was riding his "fully lit" Segway in a residential neighborhood. (Dkt. 1 at 3.) Officers of the Palm Bay Police Department "had been in th[e] neighborhood for some time." (*Id.*) One of these officers, Escandon, stopped Plaintiff "for no reason," and Plaintiff complied. (*Id.*)

---

[1] The court accepts the well-pleaded factual allegations in the complaint as true and construes them in the light most favorable to Plaintiff. *See Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002) (en banc).

Plaintiff "plac[ed] his hands on the hood of a police vehicle to warm them" and then "lifted his hands back up and was violently thrown to the ground by . . . McDonald and Mitchell." (*Id.*)  The force of the throw "aggravated" Plaintiff's hernia, a pre-existing medical condition.  (*Id.* at 4.)  McDonald and Mitchell then handcuffed Plaintiff, and Escandon arrested him without a warrant for resisting arrest, took him to a local hospital, handcuffed him to a hospital bed, and "treated [him] like a criminal in front of hospital staff." (*Id.* at 3–4.)  Plaintiff was then "unarrested" without being charged with a crime, though he has been billed by the hospital for its services.  (*Id.* at 4.)

Plaintiff initiated this action on May 29, 2024, filing a six-count complaint against Defendants.  He brings two claims under 42 U.S.C. § 1983 against Escandon for an unlawful stop, detention, and interrogation (Count I) and for false arrest or false imprisonment (Count II).  (Dkt. 1 at 4–6.)  He also raises two section 1983 claims against McDonald and Mitchell for deliberate indifference (Count V) and excessive force (Count VI). (*Id.* at 8–11.)  Count III is a Florida law claim for false arrest or false imprisonment against the City of Palm Bay, and Count IV is a Florida law claim for battery against McDonald and Mitchell.  (*Id.* at 6–8.)

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 8 requires a complaint to have a "short and plain statement of [a] claim showing that the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Carruth v. Bentley*, 942 F.3d 1047, 1053 (11th Cir. 2019) (quotation omitted). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit

as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted). Indeed, the Eleventh Circuit has "repeatedly held that a district court errs when it reserves ruling on an official's entitlement to qualified immunity," and so "[a] district court must adjudicate a defense of qualified immunity at whatever stage it is raised." *Miller v. Palm Beach Cnty. Sheriff's Off.*, No. 23-13753, 2025 WL 631192, at *3 (11th Cir. Feb. 27, 2025).

"At the motion to dismiss stage in the litigation, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." *Keating v. City of Mia.*, 598 F.3d 753, 760 (11th Cir. 2010) (quotation omitted). Accordingly, "[t]o survive a motion to dismiss based upon qualified immunity, the plaintiff must have alleged sufficient facts to support a finding of a constitutional violation of a clearly established law." *Chandler v. Sec'y of Fla., Dep't of Transp.*, 695 F.3d 1194, 1198 (11th Cir. 2012); *see id.* at 1200–01 (reversing and remanding with instructions for the district court to dismiss a claimed Fourth Amendment violation where the factual "assertions . . . [we]re insufficient to allege a Fourth Amendment seizure"). "[A]n entitlement to qualified immunity 'raised . . . on a motion to dismiss . . . *will* be granted if the complaint fails to allege the violation of a clearly established constitutional right.'" *Miller*, 2025 WL 631192, at *3 (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).

## ANALYSIS

Defendants Escandon, McDonald, and Mitchell contend that because they are entitled to qualified immunity, the section 1983 claims against them (Counts I, II, V,

and VI) must be dismissed.  (Dkt. 20 at 7–11; Dkt. 37 at 3–5.)  Plaintiff argues that the officers are not entitled to qualified immunity.  (Dkt. 23 at 5–6; Dkt. 38 at 2–4.)  The court agrees with the officers.  Because they are entitled to qualified immunity, the court does not consider their alternative arguments as to those claims.  (*See* Dkts. 20, 37.)  Moreover, because Plaintiff's section 1983 claims are due to be dismissed with prejudice, the court declines to exercise supplemental jurisdiction over the remaining state law claims (Counts III and IV).

## A. Qualified Immunity

Escandon, McDonald, and Mitchell maintain that as police officers employed by the City of Palm Bay, they are entitled to qualified immunity as to Plaintiff's section 1983 claims.  "To invoke the defense of qualified immunity, a government official must have been acting within the scope of his 'discretionary authority' when the allegedly wrongful acts occurred."  *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021).  "After a government official establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the official's conduct (1) violated federal law (2) that was clearly established at the relevant time."  *Id.*; *accord Carruth*, 942 F.3d at 1054 ("If the official makes this showing [of discretionary authority], the burden shifts to the plaintiff to show that qualified immunity is not appropriate." (quotation omitted)).

### 1. Scope of Discretionary Authority

To demonstrate that they were acting within the scope of their discretionary authority, the officers were required to show that they acted (1) "pursuant to the

performance of [their] duties" and (2) "within the scope of [their] authority." *Id.* "In applying each prong of this test, [the court] look[s] to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017)). "[A] court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (quotation omitted). The discretionary authority requirement "is not difficult to satisfy." *Marbut v. Phillips*, No. 1:22-cv-00776-VMC, 2024 WL 4579911, at *7 (N.D. Ga. Sept. 30, 2024) (citing *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019)).

Plaintiff alleges that, at all times material to his claims against them, the officers were acting in the course and scope of their employment as police officers with the Palm Bay Police Department. (Dkt. 1 at 2.) In his responses to the officers' motions to dismiss, Plaintiff does not appear to dispute that the officers were acting within the scope of their discretionary authority. (*See* Dkts. 23, 38.) To the extent that Plaintiff disputes the officers' discretionary authority, the officers acted within the scope of their discretionary authority because they were police officers conducting an investigatory stop and making an arrest. *See Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (finding that the question whether a sheriff's deputy was engaged in a

discretionary function was an "easy" one "[b]ecause making an arrest is within the official responsibilities of a sheriff's deputy"); *Nigro v. Carrasquillo*, 152 F. Supp. 3d 1364, 1368 (S.D. Fla. 2015) ("Investigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers." (quotation omitted)).  Escandon, McDonald, and Mitchell's conduct was at the very least "within, or reasonably related to, *the outer perimeter* of [their] discretionary duties." *Mikko*, 857 F.3d at 1144 (quotation omitted).

Accordingly, Plaintiff bears the burden "to show that qualified immunity is not appropriate." *Carruth*, 942 F.3d at 1054 (quotation omitted).  This burden requires him to make two showings: (1) "that the defendants violated his constitutional rights" and (2) "that, at the time of the violation, those rights were clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Stalley v. Cumbie*, 124 F.4th 1273, 1284 (11th Cir. 2024) (quotation omitted).

## 2. Constitutional Violation

The court discusses the constitutional violations alleged in Counts I and II against Escandon and then turns to those alleged in Counts V and VI against McDonald and Mitchell.

### a) Escandon—Unlawful Stop, Detention, and Interrogation (Count I)

A police officer may, "consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Gonzalez-Zea*, 995 F.3d 1297, 1302 (11th Cir. 2021).

This standard is "less demanding . . . than probable cause," *id.* at 1302–03, and requires the court to "examine 'the totality of the circumstances' to determine whether the police had 'a particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).  "A reasonable suspicion of criminal activity may be formed by observing exclusively legal activity, even if such activity is seemingly innocuous to the ordinary citizen." *Id.* (cleaned up).  That is, courts "recognize that the police may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Id.* at 1290–91 (quoting *Arvizu*, 534 U.S. at 273).  Moreover, in the context of qualified immunity, the proper inquiry is whether the challenged investigatory stop was supported by arguable, not actual, reasonable suspicion. *Meshal v. Comm'r, Ga. Dep't of Pub. Safety*, 117 F.4th 1273, 1287 (11th Cir. 2024) ("When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." (quotation omitted)).

Plaintiff alleges that Escandon "stopped" him "for no reason." (Dkt. 1 at 3.)  In the light most favorable to Plaintiff, the court interprets this allegation as asserting that Plaintiff was complying with all applicable laws, including those regulating the use of Segway vehicles, at the time Escandon stopped him.  (*See id.* at 4 (alleging that Escandon acted "in the absence of probable cause" or "lawful authority" and that his actions were "objectively unreasonable and violated the clearly established rights of

Plaintiff under the Fourth Amendment").)  Plaintiff argues that these allegations suffice to support his claim against Escandon for conducting an unlawful investigatory stop because the court must accept the complaint as true.  (Dkt. 38 at 2–4.)[2]  The court disagrees.  Although it accepts the complaint's well-pleaded factual allegations as true, Plaintiff's threadbare allegations are conclusory and therefore not entitled to the assumption of truth.  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *cf. White v. De La Osa*, No. 07-23381-CIV, 2012 WL 266427, at *5 (S.D. Fla. Jan. 30, 2012) (noting that a court "considering whether a party has stated a plausible claim for relief is not required to accept as true legal conclusions disguised as factual assertions" and accordingly disregarding the plaintiff's allegation in his proposed amended complaint that the defendant "acted without available probable cause or reasonable suspicion").  Accordingly, the court disregards these allegations and determines whether the "remaining factual allegations . . . plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 678 (quotation omitted); *see Chandler*, 695 F.3d at 1201 ("[The plaintiffs] cannot transform [the defendant's conduct] . . . into a

---

[2] While Escandon's motion to dismiss raises several discrete arguments as to both of Plaintiff's claims against him, Plaintiff fails to organize his response to the motion such that it is unclear which statements in the response are directed to which of Escandon's arguments.  (*See* Dkt. 38 at 2–4.)  While Plaintiff is by no means required to "include an itemized rebuttal response to each of the arguments he opposes in a motion to dismiss," *Ashley v. Shuemake*, No. 6:15-cv-53, 2016 WL 6272369, at *2 n.3 (S.D. Ga. Oct. 25, 2016), requiring the court to decipher his arguments is not helpful to him in satisfying his burden to show that Escandon is not entitled to qualified immunity, *see Carruth*, 942 F.3d at 1054; *see also Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1352 (11th Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

constitutional violation by conclusorily labeling it 'unlawful' and referring to it as a 'seizure.'").

Plaintiff alleges that he was riding his "fully lit personal transportation device (Segway) and was easily viewed by the Palm Bay Police in the neighborhood" when he was stopped by Escandon.  (Dkt. 1 at 3.)  Taking all the well-pleaded factual allegations as true, Plaintiff fails to allege an unlawful investigatory stop because the facts alleged do not show that the stop was unreasonable under the totality of the circumstances.  *See Lindsey*, 482 F.3d at 1290; *compare Watkins v. Chase*, No. 3:23-cv-333-MMH-JBT, 2024 WL 2833912, at *2 (M.D. Fla. June 4, 2024) (dismissing the plaintiff's complaint under Rule 8 because the plaintiff "offer[ed] no plausible or non-conclusory facts in the [complaint] to show why [the defendant] lacked reasonable suspicion to stop him and conduct a search" because "the[] limited factual allegations '[we]re merely consistent with [the defendant's] liability,' and [the plaintiff] 'stop[ped] short of the line between possibility and plausibility of entitlement to relief'" (quoting *Iqbal*, 556 U.S. at 678)), *and Wimbush v. Noonan*, No. 4:16cv288-RH/CAS, 2016 WL 7155759, at *1 (N.D. Fla. Dec. 7, 2016) (dismissing a section 1983 claim predicated on an unlawful stop where "the plaintiff d[id] not allege facts suggesting the stop was made without reasonable suspicion or probable cause"), *with Meshal v. Wright*, 651 F. Supp. 3d 1273, 1293 (S.D. Ga. 2022) (denying motion to dismiss an unlawful stop claim under section 1983 where "[t]he [c]omplaint plausibly allege[d] that the officers merely equated [the plaintiff]'s presence on the [no-fly] list to ambiguous criminal activity . . . ."), *and Hargis v. City of Orlando*, No. 6:12-cv-723-Orl-37KRS, 2012 WL

6089715, at *4 (M.D. Fla. Dec. 7, 2012) (concluding that the complaint "sufficiently allege[d] a claim of unlawful search and seizure for lack of arguable reasonable suspicion" where it alleged the defendant officer's stated basis for reasonable suspicion, which the court determined was inadequate). Accordingly, Escandon's motion is granted as to this count.

### b) Escandon—False Arrest (Count II)

"For Fourth Amendment purposes, arrests are seizures and are unreasonable unless supported by probable cause." *Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023). "Probable cause exists if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557–58 (11th Cir. 1993) (quotation omitted). However, when an officer raises qualified immunity, a court asks whether the challenged arrest was supported by merely *arguable* probable cause. *See id.* at 1558 ("When an officer asserts qualified immunity, the issue is not whether probable cause existed in fact, but whether the officer had 'arguable' probable cause to arrest. That is, the officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed." (citation omitted)). In the context of an allegedly unlawful arrest, the probable cause "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Importantly, whether an officer possesse[d] actual or arguable probable cause depends on the elements of the alleged crime and the

operative fact pattern." *Edger*, 84 F.4th at 1237 (quotation omitted). Thus, "[p]robable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

Plaintiff alleges that Escandon unlawfully arrested him "for resisting arrest." (Dkt. 1 at 4.) In the light most favorable to Plaintiff, he appears to allege that Escandon arrested him for resisting the arrest instigated by McDonald and Mitchell after Plaintiff, having "plac[ed] his hands on the hood of a police vehicle to warm them . . . lifted his hands back up." (*Id.* at 3–4.) These allegations, accepted as true, fail to state a Fourth Amendment violation because the facts alleged do not show that Escandon lacked arguable probable cause to arrest Plaintiff for resisting arrest.

Florida permits an officer to arrest individuals for resisting an officer without violence "when they 'resist, obstruct, or oppose any [law enforcement] officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer.'" *Harris v. Wingo*, 845 F. App'x 892, 896 (11th Cir. 2021) (quoting Fla. Stat. § 843.02); *see C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009) ("[T]o support a conviction for obstruction without violence, the [s]tate must prove: (1) the officer was engaged in the lawful execution of a legal duty[] and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty."). "Probable cause exists to arrest an individual for resisting an officer without violence when that individual disobeys a command by a law enforcement officer." *Harris*, 845 F. App'x at 896 (citing *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008)). Courts have found that even minor resistance

establishes probable cause for resisting without violence.  *See Slade v. Forehand*, No. 3:16-cv-59-RV-MJF, 2019 WL 1430401, at *8 n.8 (N.D. Fla. Feb. 28, 2019) (noting that "courts have held that minimally obstructive behavior can . . . establish probable cause for purposes of resisting arrest without violence" and collecting cases), *report and recommendation adopted by* 2019 WL 1434581 (N.D. Fla. Mar. 29, 2019); *Zivojinovich*, 525 F.3d at 1071–72 (finding the defendants had probable cause to arrest the plaintiff for resisting without violence where he was told to sit, "did for a moment, but then . . . stood up again," because the plaintiff "disobeyed a command by members of law enforcement to sit while they executed their lawful duties").

Plaintiff alleges that after being stopped, and without being instructed to, he "lifted his hands."  (Dkt. 1 at 3.)  The Eleventh Circuit has found arguable probable cause for resisting arrest when a person spontaneously raised their hands during an encounter with law enforcement.  *See Post*, 7 F.3d at 1559 ("[The p]laintiffs . . . concede that [one plaintiff]—without having been told to do so—raised his hands to [the officers] after being told he was under arrest.  Because a reasonable officer in [the officers'] place could have interpreted this raising of hands as resistance, [the officers] [are] entitled to qualified immunity.").  Thus, Plaintiff's alleged conduct gave Escandon arguable probable cause to arrest Plaintiff for resisting without violence.  Alternatively, Plaintiff does not satisfy his burden to demonstrate a constitutional violation, *see Carruth*, 942 F.3d at 1054, because his allegations of fact and conclusory allegation that his arrest was effected "without any arguable probable cause," (Dkt. 1 at 3–5), fail to state a claim under the Fourth Amendment.  These

allegations do not show that Escandon lacked arguable probable cause to arrest Plaintiff. *See Hesed-El v. McCord*, 829 F. App'x 469, 472 (11th Cir. 2020) (affirming the district court's dismissal of the plaintiff's false arrest claim "because [the plaintiff] did not allege sufficient facts to show the absence of probable cause for his arrest," noting that the plaintiff's "conclusory assertion that [the defendant] acted without probable cause [wa]s devoid of any facts giving rise to a plausible suggestion of . . . false arrest." (quotation omitted)); *Hernandez v. Wells*, No. 8:21-cv-1488-KKM-TGW, 2022 WL 1607190, at *6 (M.D. Fla. May 20, 2022) (dismissing Fourth Amendment claim as "entirely conclusory" where "[the plaintiff] allege[d] with some specificity where and when he was arrested . . . but offer[ed] no reason to doubt that [the defendant] had arguable probable cause"). Accordingly, the court grants Escandon's motion as to this claim, as well.

### c) McDonald and Mitchell—Deliberate Indifference (Count V)

"A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Fourteenth Amendment." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (quotation omitted). While Plaintiff here was a pretrial detainee rather than a prisoner, the same analysis applies. *See id.* at 1331 n.1. Plaintiff alleges that McDonald and Mitchell threw him to the ground with so much force that they "aggravated a pre-existing medical condition," his hernia. (Dkt. 1 at 3–4.) Plaintiff does not allege that the officers knew of this pre-existing medical condition, only that the aggravation of his hernia was a "direct and proximate result" of their "conscious disregard for the substantial risk of serious harm to Plaintiff." (*Id.*

at 8–9.)  The facts alleged in the complaint do not support that the officers knew about Plaintiff's hernia.  (*See id. passim*.)

To state a claim of deliberate indifference, Plaintiff was required to allege that the officers had subjective knowledge of the risk particular to him—absent such allegations, any alleged indifference would not be deliberate.  *See Hines v. Parker*, 725 F. App'x 801, 805 (11th Cir. 2018) (affirming the district court's dismissal of a deliberate indifference claim based on qualified immunity where the plaintiff "alleged nothing to suggest that [the defendant] knew or would have known that [the plaintiff] had a serious medical need that required immediate attention"); *cf. Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990) ("Absent knowledge of a detainee's suicidal tendencies, . . . failure to prevent suicide has never been held to constitute deliberate indifference.").  Indeed, as Plaintiff alleges, he was taken to the hospital upon the aggravation of his hernia.  (*See* Dkt. 1 at 4.)  The complaint supports that the hospital rendered services to Plaintiff—Plaintiff describes incurring hospital costs, (*id.*)—and does not mention a delay in care, (*see id. passim*).  *Cf. Ireland v. Prummell*, 53 F.4th 1274, 1294 (11th Cir. 2022) (determining that nurses did not unconstitutionally delay care when they immediately sought to contact a doctor upon observing the plaintiff's condition).  Accordingly, Plaintiff's complaint fails to state a claim of deliberate indifference.  *See Goodman*, 718 F.3d at 1332 ("[A] plaintiff . . . must show not only that there was a substantial risk of serious harm, but also that [the defendants] subjectively knew of the substantial risk of serious harm and that [they] knowingly or

recklessly disregarded that risk." (quotation omitted)).    The court thus grants McDonald and Mitchell's motion as to Count V.

### d)  McDonald and Mitchell—Excessive Force (Count VI)

"The use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). At the same time, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (quotation omitted).    The question is whether the force used was objectively reasonable "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).    This inquiry is fact intensive.    *Post*, 7 F.3d at 1559 ("Use of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" (quoting *Graham*, 490 U.S. at 396)).    "Because this standard establishes no bright line, qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [the defendant officer]'s position to conclude the force was unlawful." *Id.*

Plaintiff alleges that after he raised his hands from the hood of the police car on which he had been warming them, McDonald and Mitchell threw him to the ground and handcuffed him.  (Dkt. 1 at 3.)  While he alleges that the officers' conduct was "not objectively reasonable" and was instead "excessive and grossly disproportionate to the amount of force[] necessary," (*id.* at 10), this conclusory language must be

disregarded under Rule 8, *see Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Hogan v. Johnson*, No. 5:17-cv-01022-KOB-JEO, 2017 WL 6102818, at *2 (N.D. Ala. Oct. 17, 2017) ("Without [the] benefit of supporting factual allegations, the plaintiff in this instance asserts in conclusory fashion that he was 'wrongly assaulted' and that the defendants 'purposefully used excessive force' against him.  In that sense, the complaint pleads no specific facts which directly show a deprivation of rights."), *report and recommendation adopted by* 2017 WL 6055224 (N.D. Ala. Dec. 7, 2017).

Accepting all the facts alleged in the complaint as true, including that "Plaintiff did not pose any threat . . . to . . . Defendants or anyone else, (Dkt. 1 at 10–11), the court concludes that Count VI fails to state a claim because it does not show that the force employed by McDonald and Mitchell was objectively unreasonable.  *See Vinyard v. Wilson*, 311 F.3d 1340, 1349 n.14 (11th Cir. 2002) ("The border between permissible and excessive force is marked by a fact-intensive test conducted case-by-case.  An excessive force analysis thus requires careful attention to the facts and circumstances of each particular case.").  For example, another court in this district determined that a plaintiff failed to state a claim for excessive force where he alleged that he "was grabbed and shoved," "slammed on the ground," and "kicked and punched" by the officers after complying with their commands.  *Prescott v. Oakley*, No. 8:16-cv-060-T-27TBM, 2016 WL 8919458, at *3 (M.D. Fla. Dec. 6, 2016).  Although the plaintiff "allege[d] sufficient facts to support he was not a threat and complying with

commands . . . before he was on the ground, the facts [we]re insufficient to infer that once [the plaintiff] was on the ground he remained non-threatening and compliant with commands." *Id.* (emphasis omitted). The *Prescott* court concluded that "[b]ased on the limited facts alleged about what events occurred once [the plaintiff] was on the ground, [he] ha[d] failed to allege that the use of force by [the officers] was excessive." *Id.* at *4; *see Pribyl v. Unknown Fla. Dep't of Law Enf't Officers*, No. 4:18cv365-WS-MAF, 2021 WL 1799426, at *5 (N.D. Fla. Mar. 16, 2021) (dismissing excessive force claim because "[t]here [we]re no facts alleged which reveal[ed] that the manner in which [the p]laintiff was arrested involved excessive force"), *report and recommendation adopted by* 2021 WL 1788401 (N.D. Fla. May 4, 2021). Dismissal is required notwithstanding the fact that the force employed by the officers in this case aggravated Plaintiff's hernia. *See Rodriguez*, 280 F.3d at 1353 ("What would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time."). Accordingly, the court grants McDonald and Mitchell's motion to dismiss Count VI.

### 3. Clearly Established

Even if Plaintiff had established a constitutional violation as to any of the claims he raises against the officers—which he has not—he also fails to show that any of the rights he claims were violated were clearly established at the time of the officers' actions. *See Stalley*, 124 F.4th at 1284. A plaintiff in the Eleventh Circuit can satisfy his burden under the clearly-established prong in three ways:

> First, the plaintiff can point to a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court.  This first method looks at the relevant case[]law at the time of the alleged violation that would have made it obvious to the officer that his actions violated federal law.  The prior case[]law need not be directly on point, but an existing precedent must have placed the statutory or constitutional question beyond debate.  Second, the plaintiff can identify a broader, clearly established principle that should govern the novel facts of the situation.  Third, the plaintiff can show that the conduct at issue so obviously violated the Constitution that prior case[]law is unnecessary.

*Id.* (quotation omitted).

In his response to Escandon's motion to dismiss, Plaintiff cites a number of cases to establish the standards relevant to his claims.  (Dkt. 38 at 2–3.)  However, these broad statements of the relevant standards aside, Plaintiff cites no prior caselaw that is "materially similar" to the facts of his case to show that the constitutional violations he asserts were clearly established.  (*See* Dkt. 38 at 2–4.)  *See Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017).  The citations he does provide, which offer only high-level generalities of the law as it relates to his unlawful stop and arrest claims, are insufficient.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality.  The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."); *Vielma v. Gruler*, 808 F. App'x 872, 879–80 (11th Cir. 2020) (determining that the plaintiffs had not

demonstrated a clearly established law where they "failed to cite any case addressing materially similar facts that clearly establishe[d] the existence of the duty that [the p]laintiffs assign[ed] to [the defendant]"); *Puglia v. Nienhuis*, No. 8:22-cv-1954-VMC-CPT, 2023 WL 2743526, at *8 (M.D. Fla. Mar. 31, 2023) ("[The plaintiff] cites no case[]law at all in his discussion of whether it was clearly established that [the d]efendants' actions were unconstitutional.  This failure to carry his burden also supports the grant of qualified immunity for the individual [d]efendants." (citation omitted)).

In the absence of materially similar caselaw, Plaintiff can satisfy the clearly established prong only by identifying either "a broad statement of principle within the Constitution, statute, or case[]law," or "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case[]law." *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (quotation omitted).  These "methods are generally known as obvious clarity cases," which the Eleventh Circuit has repeatedly emphasized "will be rare." *Gaines*, 871 F.3d at 1209 (quotations omitted); *see Lee*, 284 F.3d at 1199 (referring to obvious clarity cases as a "narrow exception").  Plaintiff does not raise an obvious clarity argument in his response to Escandon's motion and the court discerns no basis to apply the principle.  (*See* Dkt. 38.)  *See Herman v. Mr. Cooper Grp. Inc.*, No. 2:23-cv-948-JES-KCD, 2024 WL 3277021, at *1 (M.D. Fla. July 2, 2024) ("In our adversarial system, a claimant must present her case.  It is not a court's job to conduct research to provide the proper support for conclusory arguments." (alteration adopted and quotation omitted)).  That reason alone is a sufficient basis to determine

that the exception does not apply in this case.  *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."), *overruled in part on other grounds by United States v. Durham*, 795 F.3d 1329, 1331 (11th Cir. 2015) (en banc) ("The only rule affected is the rule concerning the effect of a failure to raise a claim or theory in the opening brief that a party files where that claim or theory is based on an intervening Supreme Court decision."); *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1352 (11th Cir. 2009) (determining that the petitioner's failure to "even allude to" an argument did not "adequate[ly] present[] . . . the issue").

Plaintiff's response to McDonald and Mitchell's motion to dismiss suffers from the same flaws.  While Plaintiff cites two cases with regard to the officers' qualified immunity argument, he uses both only to establish general propositions regarding qualified immunity and excessive force claims generally.  (*See* Dkt. 23 at 6 (citing *Alston v. Swarbrick*, 954 F.3d 1312, 1318 (11th Cir. 2020) (reciting a plaintiff's burden to overcome a qualified immunity defense), and quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) ("Our cases hold that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force.")).)  However, to show that the law was clearly established, Plaintiff was required to point to a "materially similar" case, one "close enough to have put the statutory or constitutional question beyond debate." *Gaines*, 871 F.3d at 1209–10 (quotations omitted).  Because Plaintiff did not engage in a factual comparison of his case and those he cited, the court cannot determine "whether the factual scenario that [McDonald and Mitchell] faced

is fairly distinguishable from the circumstances facing a government official in a previous case." *Id.* at 1209 (quotation omitted).

As with his response to Escandon's motion, Plaintiff fails to raise an obvious clarity argument in his response to McDonald and Mitchell's motion, and the court finds that this narrow exception does not apply for that reason alone. *See Hamilton*, 680 F.3d at 1319. Moreover, even if he had raised an obvious clarity argument as to his excessive force claim, it would fail as a matter of law because the facts alleged do not demonstrate that McDonald and Mitchell's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [them], notwithstanding the lack of caselaw." *Elliott*, 641 F. App'x at 898 (quotation omitted). *See Oliver v. Fiorino*, 586 F.3d 898, 907–08 (11th Cir. 2009) (denying qualified immunity where the officers tasered an un-resisting person "at least eight[] and as many as eleven or twelve times over a two-minute span without attempting to arrest or otherwise subdue the plaintiff"); *Priester v. City of Riviera Beach*, 208 F.3d 919, 923 n.1, 927 (11th Cir. 2000) (denying qualified immunity where officer "ordered and allowed his [94-pound German Shepherd] to attack and bite [the p]laintiff," who was accused of stealing "$20 of snacks and crackers," and "threatened to kill [the p]laintiff when [he] kicked the dog in an effort to resist the unprovoked attack").

Because Plaintiff has failed to allege a constitutional violation of a clearly established right under Counts I, II, V, and VI, the officers' motions to dismiss these claims are granted. *Carruth*, 942 F.3d at 1054.

### B. Supplemental Jurisdiction

Under 28 U.S.C. § 1367(c), a district court has discretion to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  Because the court has determined that all of Plaintiff's claims over which this court has original jurisdiction, Counts I, II, V, and VI, are due to be dismissed with prejudice, the court declines to continue to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, Counts III and IV.  *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").  Indeed, the Eleventh Circuit has affirmatively counseled district courts to decline to exercise supplemental jurisdiction in such situations.  *See Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022) ("Although the district court has discretion, concerns of federalism—namely, of federal courts of limited jurisdiction weighing in on state law—counsel in favor of dismissing state[]law claims after the federal claims are dismissed."); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

Accordingly, Counts III and IV are due to be dismissed without prejudice.  This dismissal should not work to Plaintiff's disadvantage should he elect to bring Counts III and IV in state court because the period of limitations for these claims is tolled

during the pendency of this action. *See* 28 U.S.C. § 1367(d); *Foley v. Azam*, 257 So. 3d 1134 (applying section 1367(d) to toll the limitations period).

**CONCLUSION**

Accordingly:

1. McDonald and Mitchell's motion (Dkt. 20) is **GRANTED**.

2. Escandon's motion (Dkt. 37) is **GRANTED**.

3. Counts I, II, V, and VI of Plaintiff's complaint are **DISMISSED with prejudice**.

4. Counts III and IV of Plaintiff's complaint are **DISMISSED without prejudice** under 28 U.S.C. § 1367(c)(3).

5. The Clerk is **DIRECTED** to enter judgment in favor of Defendants as to Counts I, II, V, and VI, to terminate any pending deadlines and motions, and to close this case.

**ORDERED** in Orlando, Florida, on March 6, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record