UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SCOTT MACINTYRE,

Plaintiff,

v. Case No: 6:24-cv-988-JSS-CAB

CITY OF PALM BAY, OFFICER JUAN CASTRO ESCANDON, OFFICER COLE MCDONALD, and OFFICER DERRICK MITCHELL,

Defendants.
___________________________________/

**ORDER**

Defendants City of Palm Bay, Juan Castro Escandon, Cole McDonald, and Derrick Mitchell move to dismiss the amended complaint. (Dkt. 73.) Plaintiff Scott MacIntyre opposes the motion. (Dkt. 77.) Upon consideration, for the reasons outlined below, the motion is granted in part and denied in part.

**BACKGROUND**[1]

On the evening of December 4, 2022, Plaintiff was riding his Segway on a street in a residential neighborhood in Palm Bay. (Dkt. 70 at 4.) Plaintiff's Segway was equipped with two white lights on the front and at least one red light and two red

[1] The court accepts the well-pleaded factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002) (en banc).

reflectors on the back. (*Id.*) Plaintiff was also carrying a white hand-held light in his hand. (*Id.*) After noticing an unmarked police vehicle following him, Plaintiff pulled over onto the sidewalk and turned off the Segway's lights. (*Id.* at 5.) Escandon activated his police vehicle's lights, stopped the car, exited, and approached Plaintiff. (*Id.*) Escandon informed Plaintiff that Segways are required to adhere to regulations applicable to motor vehicles and he failed to do so. (*Id.*) Escandon then asked for Plaintiff's driver's license, which Plaintiff provided. (*Id.*)

While Plaintiff was speaking with Escandon, two other officers, Mitchell and McDonald (collectively Defendant Officers), arrived on scene. (*Id.* at 6.) Plaintiff asked Mitchell if he could place his hands on the hood of one of Defendants' police vehicles to warm them. (*Id.* at 6.) Mitchell responded, "[g]o ahead," and Plaintiff briefly placed his hands on the hood. (*Id.*) When Plaintiff finished, he took his hands off the vehicle, lifted his shirt and stated, "I got no weapons . . . you guys have no reason to search me." (*Id.* at 7.) McDonald ordered Plaintiff to place his hands back on the hood of the police vehicle, to which Plaintiff responded, "[i]s that a lawful order?" (*Id.*) Immediately, Mitchell and McDonald grabbed Plaintiff by his wrists and "slammed him to the ground." (*Id.*) All three Defendant Officers then "yanked [Plaintiff] back and forth between themselves," yelling at Plaintiff to "stop resisting." (*Id.*) Plaintiff yelled out in pain and explained that he suffered from a medical

condition.[2] (*Id.*) While handcuffing Plaintiff, who was still on the ground, Escandon placed his hand on Defendant's upper back area and pressed down with his full body weight, prompting Plaintiff to ask why Escandon "put his knee all in my . . . lungs." (*Id.* at 8.) McDonald and Escandon subsequently searched Plaintiff's pockets, finding a wallet containing three hundred dollars in cash and a pocketknife worth approximately one hundred and fifty dollars. (*Id.* at 8.)

Plaintiff was charged with resisting arrest without violence and was transported to Palm Bay Hospital by Escandon. (*Id.* at 9.) There, Plaintiff was told by another officer that he would not be charged with any crime and was free to leave. (*Id.*) Defendant Officers returned Plaintiff's belongings to him, but Plaintiff objected that forty dollars and his pocketknife were missing. (*Id.* at 10.) Neither were returned to Plaintiff. (*Id.*) Escandon admitted that he had lost Plaintiff's pocketknife and offered Plaintiff another knife, which Plaintiff declined. (*Id.*) Escandon later submitted an incident report stating that Plaintiff did not want his pocketknife back so "the knife was put in for safekeeping." (*Id.*) Plaintiff was subsequently discharged and billed for medical services. (*Id.*)

The operative complaint brings eight counts. (*Id.*) In counts I–IV, Plaintiff alleges claims under 42 U.S.C. § 1983 for excessive force against McDonald and Mitchell, unlawful arrest against Defendant Officers, unlawful stop and seizure against

[2] At the time, Plaintiff referred to the condition as a "pulmonary embolism." (Dkt. 70 at 7.) Plaintiff later clarified that he had misspoken, and the condition is a hernia. (*See id.* at 7 n.1.)

Escandon, and procedural due process violations against Defendant Officers and the City of Palm Bay. (*Id.*) In count V, Plaintiff alleges a Takings Clause claim under the Fifth Amendment of the United States Constitution against the City of Palm Bay. (*Id.* at 17–18.) Finally, in counts VI–VII, Plaintiff alleges state common-law claims for battery, false arrest, and conversion against Defendant Officers and the City of Palm Bay. (*Id.* at 18–23.)

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8 requires a complaint to have a "short and plain statement of [a] claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

In deciding a motion to dismiss for failure to state a claim, a court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etailed factual allegations" are generally not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## ANALYSIS

Defendants move to dismiss the amended complaint because they argue that Defendant Officers are entitled to qualified immunity, and that Plaintiff fails to state a claim upon which relief can be granted. (Dkt. 73 at 7–19.) Plaintiff disagrees. (Dkt. 77 at 4–14, 17–19.) The court first addresses qualified immunity before turning to the Takings Clause and state-law claims.

### A. Qualified Immunity

Defendant Officers maintain that they are entitled to qualified immunity as to Plaintiff's section 1983 claims. (Dkt. 73 at 4–7.) Qualified immunity protects police officers from liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The question of qualified immunity should be resolved in the defendant's favor on a motion to dismiss if the

plaintiff fails to allege the violation of a clearly established constitutional right." *Williams v. Alabama State U.*, 102 F.3d 1179, 1182 (11th Cir. 1997); *see St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) ("While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss."); *Breedlove v. Hill*, No. 24-11579, 2025 WL 1906057, at *3 (11th Cir. July 10, 2025) ("[A] court may grant qualified immunity at the motion-to-dismiss stage . . . if [the] plaintiff's complaint fails to allege the violation of a clearly established right.").

"An official asserting the affirmative defense of qualified immunity must initially establish that he was acting within his discretionary authority." *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). The burden then "shifts to the plaintiff to show that the official is not entitled to qualified immunity" by demonstrating "that the defendant's conduct violated a statutory or constitutional right," and that "the violation was 'clearly established.'" *Id.* at 1137 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts may consider these in either order and an officer is entitled to qualified immunity if the plaintiff fails to establish either prong. *See Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1284–85 (11th Cir. 2025) (noting that "[c]ourts may analyze th[e clearly-established] prong of the qualified-immunity analysis and the rights-violation prong in any order," analyzing only the clearly established prong, and concluding that the plaintiff had not pointed to any clearly established law); *Washington v. Rivera*, 939 F.3d 1239, 1245 (11th Cir. 2019) (explaining that courts can

address the two prongs of qualified immunity in either order); *Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013) (explaining that courts "are afforded the flexibility to determine that the right allegedly violated was not clearly established without deciding whether a constitutional violation occurred at all").

"A plaintiff can satisfy his burden as to the clearly-established prong of the qualified immunity framework in one of . . . three ways." *Stalley v. Cumbie*, 124 F.4th 1273, 1284 (11th Cir. 2024). The primary way plaintiffs satisfy this prong is by pointing "to a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court." *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018). Specifically, the plaintiff must identify "relevant case[]law at the time of the alleged violation that would have made it obvious to the officer that his actions violated federal law." *Id.* "The prior case[]law need not be directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). In assessing whether an earlier case clearly establishes a certain principle, courts must determine "whether the case[] involved facts materially similar to those in th[e present] case" and are thus "not fairly distinguishable." *Pace v. Capobianco*, 283 F.3d 1275, 1283 (11th Cir. 2002). If the cases are not materially similar, and thus are fairly distinguishable, the earlier case "provide[s] insufficient notice to the official to clearly establish the law." *Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012). "If reasonable people can differ on the

lawfulness of a government official's actions despite existing case law, he did not have fair warning and is entitled to qualified immunity." *Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017). A plaintiff can also satisfy the clearly established prong by identifying either "a broad statement of principle within the Constitution, statute, or case[]law that clearly establishes a constitutional right," or "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case[]law." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1292 (11th Cir. 2009). These latter two "methods are generally known as obvious clarity cases," which are rare. *Gaines*, 871 F.3d at 1209 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1350–51 (11th Cir. 2002)); *see Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (noting that this is a "narrow exception").

Neither party contests that Defendant Officers were acting within the scope of their discretionary authority, and the court concludes that they were. (*See* Dkts. 73, 77.) *See Herbert v. Miller*, No. CV 619-052, 2022 WL 791928, at *6 (S.D. Ga. Mar. 14, 2022) (finding that an officer was "clearly acting within the scope of his discretionary authority" when neither party contested that he was on-duty at all times relevant to the action); *see also Pyatt v. Fla. Int'l Univ. Bd. of Trs.*, No. 1:20-CV-24085, 2020 WL 6945962, at *7 (S.D. Fla. Nov. 25, 2020) (concluding that the defendants "carried their initial burden" where the plaintiff did not contest it). Accordingly, the court turns to whether the operative complaint sufficiently alleges that Defendants violated Plaintiff's constitutional rights, and whether those rights are clearly established. *See*

*Patel*, 969 F.3d at 1181 (noting that the district court determined that the officer acted in the scope of his discretionary authority, and accordingly the burden was on the plaintiff to show that the officer violated a constitutional right and that this right was clearly established at the time of the alleged violation).

**1. Excessive Force**

**a) Constitutional Violation**

"The use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). Still, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The question is whether the force used was objectively reasonable "in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." *Id.* at 397. This inquiry is fact intensive. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) ("Use of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" (quoting *Graham*, 490 U.S. at 396)), *modified*, 14 F.3d 583 (11th Cir. 1994). To determine whether the force used is excessive, courts analyze (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

As to the severity of the crime, Plaintiff was arrested for resisting arrest without violence—a misdemeanor. (Dkt. 70 at 13–14.) *See* Fla. Stat. § 843.02 (2022) (explaining that resisting without violence is a misdemeanor). Because "less force is appropriate when the crime at issue is a misdemeanor," this factor leans in favor of Plaintiff. *See Richmond v. Badia*, 47 F.4th 1172, 1183 (11th Cir. 2022); *see also Stryker v. City of Homewood*, 978 F.3d 769, 774 (11th Cir. 2020) (finding that excessive force was used where the crime at issue was a misdemeanor and suspect did not attempt to flee or pose a threat); *Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011) ("[R]esisting arrest without force does not connote a level of dangerousness that would justify a greater use of force."); *Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) (grabbing a suspect's arm, using a chokehold, and throwing him to the ground was excessive where crime at issue was a misdemeanor).

Next, it does not appear that Plaintiff "pose[d] an immediate threat to the safety of the officers or others" by failing to immediately comply with a single instruction. *See Graham*, 490 U.S. at 396. Plaintiff alleges that he asked for permission to place his hands on the car to warm his hands, which was granted. (Dkt. 70 at 6.) Plaintiff then sought to demonstrate "that he was not a threat by lifting his shirt to show that he had nothing concealed in his waistband or under his shirt while declaring, 'I got no weapons . . . you guys have no reason to search me.'" (*Id.* at 7.) *See Mercado v. City of Orlando*, 407 F.3d 1152, 1157 (11th Cir. 2005) (holding that a suspect armed with a knife "posed no threat to the police" because there was "no indication that he made

any threatening moves toward the police"); *Burks v. Beary*, 713 F. Supp. 2d 1350, 1356 (M.D. Fla. 2010) (denying qualified immunity on excessive force claim at the summary judgment stage where the plaintiff was armed with a knife but "never attacked or threatened . . . anyone else with the knife"). McDonald then demanded, for the first time, that Plaintiff "put his hands back on the car and to keep his hands on the car." (Dkt. 70 at 7 (quotation omitted).) In response, Plaintiff asked, "[i]s that a lawful order?" (*Id.*) Immediately, McDonald and Mitchell slammed Plaintiff to the ground. (*Id.*) *See Brown v. City of Huntsville*, 608 F.3d 724, 739 (11th Cir. 2010) (finding that a plaintiff who failed to immediately comply with an officer's requests "did not pose a threat to anyone's safety"). Once Plaintiff was on the ground, immobile, and in the process of being handcuffed, Plaintiff alleges that Defendant Officers continued to "yank[] [him] back and forth between themselves[,] . . . [and] press[] down [on Plaintiff's upper back/neck] with [their] full body weight." (Dkt. 70 at 7–8.) *See Acosta v. Miami-Dade Cnty.*, 97 F.4th 1233, 1240 (11th Cir. 2024) (finding that the plaintiff posed no immediate threat to the officers once he "had been taken to the ground and subdued and was no longer resisting," even though he "posed some threat to the officers early in the encounter, when he was slamming doors, throwing elbows, etc."). Based on the allegations in the operative complaint, the court concludes that Plaintiff did not pose a reasonable threat to officer safety. (Dkt. 70 at 4–8.) *See Ingram v. Kubik*, 30 F.4th 1241, 1250–52 (11th Cir. 2022) (finding that even a plaintiff who exhibited "erratic behavior" when he walked away from deputies and put his hands up without

permission posed no threat to officer safety that would necessitate the use of force); *Stephens v. DeGiovanni*, 852 F.3d 1298, 1307, 1322 (11th Cir. 2017) (holding that a plaintiff that questioned an officer during a stop did not pose a threat to officer safety).

Defendant Officers contend that Plaintiff posed an immediate threat to the safety of the officers or others because he was "constantly moving his hands without instruction." (Dkt. 73 at 10.) Accordingly, Defendant Officers contend that they felt that Plaintiff "may [have] be[en] a threat to them" and they "had a reasonable suspicion that [Plaintiff] might be dangerous for refusing to follow their orders." (*Id.*) Yet the complaint does not allege that Plaintiff was constantly moving his hands without instruction. (*See* Dkt. 70 at 12–13 ("[Plaintiff] did not make threatening statements or movements toward the [Defendant] Officers.").) At the motion to dismiss stage, the court accepts the well-pleaded allegations in the complaint as true and accordingly declines to consider facts not included in the operative complaint. *See Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) ("[I]t is generally true that the scope of the review must be limited to the four corners of the complaint." (quoting *St. George*, 285 F.3d at 1337); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) ("[W]hen ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true.").

Finally, according to the operative complaint, Plaintiff neither attempted to flee nor resisted arrest. (*See* Dkt. 70 at 7.) *See Hawkins v. Carmean*, 562 F. App'x 740, 743–44 (11th Cir. 2014) (explaining that, although the plaintiff "did not immediately comply" with the officer's commands, that fact, "without more, did not support a reasonable belief that [the plaintiff] was noncompliant or resistant"). Instead, Plaintiff was "slammed . . . to the ground" and was "immobile" while Defendant Officers "yanked [Plaintiff] back and forth between themselves." (*See* Dkt. 70 at 7–8.) *See Sebastian v. Ortiz*, 918 F.3d 1301, 1311 (11th Cir. 2019) (explaining that "if an arrestee demonstrates compliance, but the officer nonetheless inflicts gratuitous and substantial injury using ordinary arrest tactics, then the officer may have used excessive force" even if the arrestee "was initially recalcitrant and even acted aggressively toward the officer"). Defendant Officers disagree, arguing that Plaintiff "fail[ed] to follow [Defendants'] instructions and ma[de] up his own instructions." (Dkt. 73 at 10.) As previously explained, the operative complaint does not support this assertion. (*See* Dkt. 70 at 7.) *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (explaining that, at the motion to dismiss stage, courts "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor"). To the extent that Defendants contend that either Plaintiff's question or his failure to immediately place his hands back on the car constitute resisting arrest, use of force without warning immediately after issuing a command is not reasonable. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1154, 1157–58 (11th Cir. 2005) (denying qualified immunity and

finding a plaintiff who failed to immediately comply and took "[f]ifteen to thirty seconds" to do so was not "resisting arrest" so the force used was excessive); *Davis v. Williams*, 451 F.3d 759, 763, 766–67 (11th Cir. 2006) (holding that certain inquiries officers questions does not constitute "do not constitute obstruction of justice or disorderly conduct").

In sum, at the motion to dismiss stage, the court concludes that Plaintiff sufficiently pleads that Defendant Officers used excessive force. *See Patel v. City of Madison*, 959 F.3d 1330, 1343 (11th Cir. 2020) (finding that an officer's takedown of a nonresistant plaintiff violated that plaintiff's "right to be free from the use of excessive force"); *see also Rubio v. Lopez*, 445 F. App'x 170, 174 (11th Cir. 2011) ("[I]t is clear that an officer cannot use gratuitous force against an incapacitated arrestee.").

**b) Clearly Established**

It is clearly established that when a suspect is not resisting arrest, any gratuitous use of force constitutes excessive force. *See Stryker*, 978 F.3d at 775 (noting that the Eleventh Circuit has "consistently held that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force" (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008))); *Acosta*, 97 F.4th at 1241–42 (holding that it was clearly established in 2014 that an officer cannot use gratuitous force against a suspect who was not resisting). For instance, in *Stryker*, the Eleventh Circuit held that officers violated a clearly established right when they "beat, kicked, and choked" the plaintiff after the officers "had control over [the plaintiff's] body and hands" because

"striking a compliant and nonthreatening suspect constitutes excessive force." *Stryker*, 978 F.3d at 775–76. Similarly, in *Acosta*, the Eleventh Circuit explained that the officers violated a clearly established constitutional right where the arrestee stopped resisting once he was on the ground, but the officers continued to use force, including holding the arrestee in a chokehold and tasing him. *See Acosta*, 97 F.4th at 1241–42.

Here, Plaintiff alleges that he was not resisting and was obeying commands, yet was slammed to the ground, immobilized, and then yanked back and forth by Defendant Officers. (*See* Dkt. 70 at 7–8.) *See Ingram*, 30 F.4th at 1254 (holding that a "headfirst body slam was a gratuitous use of force against someone who was not resisting arrest that . . . precedent[] ha[s] established constitutes excessive force" (quoting *Hadley*, 526 F.3d at 1330)). The court concludes that Plaintiff has met his burden of showing that Defendant Officers violated Plaintiff's clearly established constitutional rights and are not entitled to qualified immunity at this stage. *See Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) ("[A] police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands."); *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (stating that it is "clearly establishe[d] that the use of force against an [individual] who . . . is not a

threat, has not exhibited aggressive behavior, and has not actively resisted arrest is excessive.").[3]

**2. Unlawful Arrest**

**a) Constitutional Violation**

"For Fourth Amendment purposes, arrests are seizures and are unreasonable unless supported by probable cause." *Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023). Probable cause exists "if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990) (footnote omitted). "When an officer asserts qualified immunity, the issue is not whether probable cause existed in fact, but whether the officer had 'arguable' probable cause to arrest." *Post*, 7 F.3d at 1558 (quoting *Moore v. Gwinnett Cnty.*, 967 F.2d 1495, 1497 (11th Cir. 1992)). The probable cause inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Brown*, 608 F.3d at 735. Arguable probable cause "does not

[3] Plaintiff also cites *Patel v. City of Madison*, 959 F.3d 1330 (11th Cir. 2020) as a "materially similar case." (Dkt. 70 at 14–15.) Because the court finds that the clearly established prong is met through the "broader, clearly established principle," the court does not find it necessary to analyze whether *Patel* is a materially similar case. *See Ingram*, 30 F.4th at 1252 ("[Plaintiff] can establish that the right was clearly established at the time of the alleged violation . . . in any of three ways." (quotation omitted)).

shield officers who unreasonably conclude that probable cause exists." *Skop*, 485 F.3d at 1137 (emphasis omitted).

In Florida, an officer may arrest individuals for resisting without violence "when they 'resist, obstruct, or oppose any law enforcement officer in the lawful execution of any legal duty, without offering or doing violence to the person of the officer.'" *Harris v. Wingo*, 845 F. App'x 892, 896 (11th Cir. 2021) (alterations adopted and quoting Fla. Stat. § 843.02); *see C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009) (explaining that, under section 843.02, "the [s]tate must prove: (1) the officer was engaged in the lawful execution of a legal duty[,] and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty"). "Florida courts have generally held, with very limited exceptions, that physical conduct must accompany offensive words to support a conviction under [section] 843.02." *Davis*, 451 F.3d at 765 (footnote omitted); *see DeRosa v. Sheriff of Collier Cnty., Fla.*, 416 F. App'x 839, 840 (11th Cir. 2011) (noting that "[a]lthough mere words can violate section 843.02, the words must thwart an officer from performing his official duties" and that "Florida courts have long held that criticism cannot support a conviction for obstruction, even if the criticism is insulting or defiant"); *see also Reese*, 527 F.3d at 1272 (applying Georgia law and noting that "[f]or speech to rise to the level of obstruction, it must be reasonably interpreted to be a threat of violence to the officer, which would amount to obstruction or hinderance").

Plaintiff alleges that Escandon arrested him immediately after Plaintiff asked if McDonald's request that Plaintiff "keep his hands on the car" was a lawful order. (Dkt. 70 at 7.) *See Petithomme v. County of Miami–Dade*, 511 F. App'x 966, 971–72 (11th Cir. 2013) (noting that the plaintiff asking the police questions about their investigation and why they were searching her vehicle did not give arguable probable cause for resisting arrest without violence); *Johnson v. Israel*, 576 F. Supp. 3d 1231, 1247 (S.D. Fla. 2021) (finding that the deputies "lacked even arguable probable cause to believe" that the plaintiff was resisting arrest when he asked questions of the deputies because the question did not interfere with the deputies' ability to conduct the traffic stop and "we live in a free nation, where people are empowered to question—even criticize—the servants of the law without fear of prosecution"). Questioning an officer's command is not sufficient to establish even arguable probable cause for resisting arrest. *See Davis*, 451 F.3d at 766–67 (finding that neither "mere words" nor "simple inquir[ies]" would suffice to provide arguable probable cause for resisting without violence); *Stephens*, 852 F.3d at 1307, 1323 (finding that a plaintiff who questioned an officer during a traffic stop was not resisting the officer's investigation). Additionally, failing to immediately comply with an officer's instruction does not, by itself, provide arguable probable cause for resisting arrest. *See Mercado*, 407 F.3d at 1157 (concluding that a plaintiff who did not immediately comply "[a]rguably[] . . . did not have time to obey [the officer]'s order" because the officer responded "within seconds of making th[e] request"); *Anderson v. Rodriguez*, No. 21-24438-CV, 2024 WL 4249644, at *5 (S.D.

Fla. Aug. 12, 2024) (finding that a plaintiff was not resisting arrest even though the plaintiff did not immediately comply with the officers' instructions and asked clarifying questions).

Because Plaintiff's conduct, as alleged, could not have constituted resisting arrest, at this stage the court concludes that Defendant Officers did not have arguable probable cause. *See Carter v. Gore*, 557 F. App'x 904, 911 (11th Cir. 2014) (denying qualified immunity where "the entirety of the facts known to [the officer] could not establish arguable probable cause"); *Johnson*, 576 F. Supp. 3d at 1250 ("[P]erceived verbal slights cannot supply the basis for a lawful arrest."); *Powell v. Haddock*, No. 5:08-CV-367/RS-MD, 2009 WL 10697968, at *3 (N.D. Fla. Sept. 24, 2009) (finding that the plaintiff's question "to the officer did not rise to the level of obstruction under Florida Statute [section] 843.02"), *aff'd*, 366 F. App'x 29 (11th Cir. 2010); *Ruizdelatorre v. City of Miami Beach*, No. 06-21183-CIV, 2007 WL 9702359, at *10 (S.D. Fla. June 26, 2007) (explaining that questions do "not rise to the level of obstruction required to arrest someone under [s]ection 843.02").

**b) Clearly Established**

Where officers lack arguable probable cause to effectuate an arrest for resisting arrest, that officer violates a clearly established Fourth Amendment right. *See Durrithy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003) ("Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment."); *Harris*, 845 F. App'x at 896 ("Because the deputies lacked arguable

probable cause to arrest [the plaintiff] on [resisting without violence], . . . the arrest violated [the plaintiff]'s clearly established Fourth Amendment rights.").

Here, as discussed above, the facts as alleged in the operative complaint do not establish arguable probable cause to arrest Plaintiff for resisting without violence. (*See* Dkt. 70 at 6–8.) *See Andrews v. Scott*, 729 F. App'x 804, 811 (11th Cir. 2018) ("[A] person may ask reasonable questions of a police officer without giving rise to probable cause or arguable probable cause for obstruction of justice."); *Petithomme*, 511 F. App'x at 971–72 ("[The p]laintiff's questions directed towards the [o]fficers . . . cannot give rise to arguable probable cause because verbal interruptions and simple inquiries as to an officer's purpose cannot be construed as obstruction under Florida law."); *Johnson*, 576 F. Supp. 3d at 1248 at n.7 (explaining that "since the 1980s, the law has been clear: words alone (in most cases) cannot supply the basis for an arrest" and collecting cases).

Thus, the court finds that Defendant Officers are not entitled to qualified immunity at this stage. *See Cozzi v. City of Birmingham*, 892 F.3d 1288, 1297–98 (11th Cir. 2018) (holding that an arrest "without arguable probable cause . . . violated clearly established law" so the officer was "not entitled to qualified immunity"); *Skop*, 485 F.3d at 1139, 1144 (denying qualified immunity because "simply reiterat[ing] or attempt[ing] to clarify a perfectly reasonable question directed to [an] officer," provides "neither probable cause nor arguable probable cause to arrest for obstruction" so the officer "did not possess arguable probable cause to arrest [the plaintiff], and thus violated clearly established law").

### 3. Unlawful Stop and Seizure

#### a) Constitutional Violation

A police officer may, "consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). The standard for reasonable suspicion is "less demanding . . . than probable cause." *Id.* at 1302–03. However, it still requires the court to "examine 'the totality of the circumstances' to determine whether the police had 'a particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "[A] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity, . . . even if such activity is seemingly innocuous to the ordinary citizen." *Id.* (quotation omitted). Courts recognize that the police may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Arvizu*, 534 U.S. at 750–51. Moreover, here, the proper inquiry is whether the challenged investigatory stop was supported by arguable reasonable suspicion. *See Meshal v. Comm'r, Georgia Dep't of Pub. Safety*, 117 F.4th 1273, 1287 (11th Cir. 2024) ("When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had arguable reasonable suspicion to support an investigatory stop." (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000))).

According to the operative complaint, Plaintiff "pulled over onto the sidewalk and disabled the lights on the Segway." (Dkt. 70 at 5.) The facts, as alleged, do not make clear whether Plaintiff was still riding the Segway when he turned the lights off or if he was already on the sidewalk. (*See id.* at 4–5.) *See* Fla. Stat. 316.2065(7) ("Every bicycle *in use* between sunset and sunrise shall be equipped with a lamp on the front exhibiting a white light . . . and a lamp and reflector on the rear exhibiting a red light . . ." (emphasis added)); *see also United States v. Johnson*, No. 24-14083, 2026 WL 84476, at *5 (11th Cir. Jan. 12, 2026) (holding that an officer had probable cause to stop a plaintiff because the plaintiff was "using—pedaling and riding—the bicycle without proper lights"). Although Plaintiff adds in response to the motion to dismiss that he turned his lights off after he got off the Segway, "any new factual allegations offered for the first time in Plaintiff's opposition will not be considered." *See Merritt v. Mathewson*, No. 2:24-CV-397-KCD-NPM, 2026 WL 717975, at *2 (M.D. Fla. Mar. 16, 2026); *see also Erb. v. Advantage Sales & Mktg. LLC*, No. 6:11-CV-2629-SLB, 2012 WL 3260446, at *3 (N.D. Ala. Aug. 3, 2012) ("Motions to dismiss brought pursuant to Rule 12(b)(6) test the sufficiency of the factual allegations contained in the complaint, and a party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion.").

Ultimately, whether Escandon had arguable reasonable suspicion to stop Plaintiff requires additional information, specifically, whether Plaintiff was still on an active Segway when he disabled the lights. *See Montanez v. City of Orlando*, 678 F.

App'x. 905, 909 (11th Cir. 2017) (finding that "a reasonable officer . . . would have had more than arguable suspicion" to make a stop where the officer observed a bicycle in use without proper lighting after the sun had set and it was dark out). Accordingly, at this stage, the court dismisses the claim without prejudice. *See McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) (explaining that the plaintiff has the burden to overcome a qualified immunity defense). Because the court finds that the operative amended complaint does not adequately allege a constitutional violation, the court declines to analyze whether the right was clearly established. *See Burrell v. Bd. of Trustees of Ga. Mil. College*, 970 F.2d 785, 792 (11th Cir. 1992) ("Without a constitutional violation, there can be no violation of a clearly established right.").

**4. Procedural Due Process**

**a) Constitutional Violation**

Plaintiff alleges that his procedural due process rights were violated by Defendants when Defendant Officers took and did not return his money and pocketknife. (Dkt. 70 at 17.) A section 1983 claim alleging a denial of procedural due process has three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest[,] (2) state action[,] and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available."

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) ("Even assuming the continued retention of [the] plaintiff['s] personal property is wrongful, no procedural due process violation has occurred if a meaningful post[-]deprivation remedy for the loss is available." (quotation omitted)).

Here, there is a meaningful post-deprivation remedy for the loss of Plaintiff's property. "Under the law of Florida, law enforcement officers may be liable for conversion for the seizure or retention of personal property." *Case v. Eslinger*, 555 F.3d 1317, 1331 (11th Cir. 2009) (quotation omitted); *Jackson v. Hill*, 569 F. App'x 697, 698 (11th Cir. 2014) ("Under Florida law, [an individual] can sue the officers for the conversion of his personal property."). Because "a civil cause of action for wrongful conversion of personal property under state law is a sufficient post[-]deprivation remedy when it extends to unauthorized seizures of personal property by state officers," no procedural due process violation has occurred. *See Case*, 555 F.3d at 1331 (quotation omitted); *see also Lindsey*, 936 F.2d at 561 (noting that the plaintiff had "access to an adequate post[-]deprivation remedy" so "no procedural due process violation ha[d] occurred"); *Jackson*, 569 F. App'x at 698 (affirming that a district court did not abuse its discretion when it dismissed a claim that he was deprived of due process because he had an adequate post-deprivation remedy under state law); *Washington v. Bowers*, No. 3:26-CV-156-JEP-LLL, 2026 WL 776161, at *2 (M.D. Fla. Mar. 19, 2026) (finding that the plaintiff did "not state a plausible claim under [section] 1983 for a violation of the Fourteenth Amendment's Due Process clause" because

Florida's civil cause of action for conversion provides an adequate post-deprivation remedy when law enforcement officers seize or retain personal property*); Netherland v. Williams*, No. 3:22-CV-983-BJD-PDB, 2022 WL 9349223, at *2 (M.D. Fla. Oct. 14, 2022) (dismissing due process claim because the plaintiff had meaningful post-deprivation remedies available in the form of a conversion claim under Florida law).

**B. Takings Clause**

Next, Plaintiff brings a claim under the Takings Clause based on Defendant Officers' alleged failure to return his property or compensate him for the property taken. (Dkt. 70 at 17–18.) "[P]recedent[] do[es] not cleanly answer the question whether a plaintiff has a cause of action arising directly under the Takings Clause." *DeVillier v. Texas*, 601 U.S. 285, 292 (2024). "Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts." *Id.* at 291. Plaintiff contends that a federal cause of action against local governments exists under the Fifth Amendment. (*See* Dkt. 77 at 17–19.) *See Fulton v. Fulton Cnty. Bd. of Commissioners*, 148 F.4th 1224, 1256 (11th Cir. 2025), *reh'g en banc granted, opinion vacated*, 174 F.4th 1350 (11th Cir. 2026). In *Fulton*, a plaintiff sued after Fulton County seized seven horses in the plaintiff's possession and failed to return or otherwise compensate the plaintiff for the loss of his property. *Id.* at 1233. The Eleventh Circuit held that a litigant may sue a county directly under the Takings Clause. *See id.* at 1238. But the Eleventh Circuit vacated the opinion upon which Plaintiff relies, and vacated opinions are void and "[n]one of the statements made in . . . them ha[ve] any

remaining force." *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002).

To the extent that this vacated opinion remains persuasive authority and Plaintiff asks the court to treat it as such and create a cause of action, the court declines to do so. *See Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) (explaining that courts "are free to give statements in a vacated opinion persuasive value"); *see also Egbert v. Boule*, 596 U.S. 482, 491 (2022) ("At bottom, creating a cause of action is a legislative endeavor."). Further, *Fulton* is distinguishable as the plaintiff's state-law claim was time-barred, and thus the court could not "avoid the question of whether [the plaintiff could] proceed directly under the federal Constitution." *See* 148 F.4th at 1236. In contrast, here, Plaintiff's claim is not time-barred, and state law provides a cause of action. *See DeVillier*, 601 U.S. at 293 (denying a Takings Clause claim when a state-law claim was an available remedy for the plaintiff); *Ellison v. Lester*, 275 F. App'x 900, 901–02 (11th Cir. 2008) ("[T]he four-year statute of limitations under Fla. Stat. § 95.11(3) applies to [section] 1983 claims arising in Florida."); *Williams v. Birmingham Water Works & Sewer Bd.*, No. 2:23-CV-1416-GMB, 2024 WL 5256495, at *3 (N.D. Ala. Nov. 14, 2024) (explaining that "even if it would be proper to bring a direct cause of action under the Takings Clause, it would be duplicative" where the plaintiff could bring either a section 1983 claim or state law provided a cause of action). Accordingly, Plaintiff has not stated a Takings Clause claim.

## C. State Law Claims

### 1. Battery

Plaintiff alleges a claim for battery under Florida common law against Defendant Officers, or, in the alternative, the City of Palm Bay based on McDonald and Mitchell grabbing Plaintiff and slamming him to the ground and on Castro putting his full weight on Plaintiff when Plaintiff was already on the ground and restrained. (Dkt. 70 at 18–20.) Under Florida law, "[a] battery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Colony Ins. Co. v. Barnes*, 189 F. App'x 941, 943 (11th Cir. 2006) (emphasis omitted and quoting *Paul v. Holbrook*, 696 So.2d 1311, 1312 (Fla. 5th DCA 1997)); *Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011) ("Under Florida law, the tort of battery requires the plaintiff to prove the following elements: (1) the intent to cause a harmful or offensive contact with another person[,] and (2) an offensive contact that directly or indirectly results.").

"Florida sovereign immunity does not bar all suits based on excessive force or battery by a police officer." *Gregory v. Miami-Dade Cnty.*, 719 F. App'x 859, 873 (11th Cir. 2017). "Pursuant to Florida law, police officers are entitled to a presumption of good faith in regard to the use of force applied during a lawful arrest, and officers are only liable for damage where the force used is clearly excessive." *Davis*, 451 F.3d at 768 (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996)). As a result, "a claim of battery under Florida law is similar to a claim of excessive force

under the Fourth Amendment." *Medina v. City of Daytona Beach*, No. 25-10552, 2025 WL 3251209, at *4 (11th Cir. Nov. 21, 2025); *see Davis*, 451 F.3d at 768 ("If an officer uses excessive force, the 'ordinarily protected use of force is transformed into a battery.'" (ellipses omitted and quoting *Sanders*, 672 So. 2d at 47)). Accordingly, "[a] battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Medina*, 2025 WL 3251209, at *4 (quoting *Sanders*, 672 So. 2d at 47). As explained earlier, at this stage the court concludes that Defendant Officers' use of force was excessive, so Plaintiff adequately states a claim battery. *See Davis*, 451 F.3d at 768 (finding triable issue of fact on Florida battery claim for same reasons as Fourth Amendment excessive force claim).

In the alternative, Plaintiff brings this claim against City of Palm Bay. (Dkt. 70 at 18–20.) "Florida law . . . allows a plaintiff to recover against a municipality for the tortious acts of its employees based upon a theory of respondeat superior." *Laster v. City of Tampa Police Dep't*, 575 F. App'x 869 (11th Cir. 2014) (emphasis omitted). The relevant sovereign immunity statute provides that

> [t]he state or its subdivisions shall not be liable in tort for the acts . . . of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). Thus, the City of Palm Bay may be held liable for a battery committed by an employee. *See Gregory*, 719 Fed. App'x at 873 (explaining that a plaintiff must establish "that [the officer] committed an intentional and wholly

unjustified battery against [the plaintiff] but did not do so in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of the plaintiff's rights" and "may use alternative pleading to bring suit against both a government entity and an individual employee, but, if the factual allegations can occur only from bad faith or malicious or wanton and willful conduct, then the claim against the government entity fails under [section] 768.28"); *Pryor v. Robinson*, No. 8:26-CV-327-VMC-TGW, 2026 WL 2052181, at *5 (M.D. Fla. July 16, 2026) (noting that, to assert a claim for battery against an officer in their official capacity in Florida, a plaintiff must allege facts establishing common law battery and that the acts were not committed while acting outside the course and scope of their employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property").

In response to Plaintiff's battery claim, Defendants contend that "Plaintiff has failed to provide evidence that, if believed, would demonstrate the Defendant Officers acted in bad faith, malicious purpose or wanton and willful disregard for human rights."[4] (Dkt. 73 at 21.) But "[a]t the pleading stage, the question is not one of

[4] The court also notes that the implication of this argument is that Defendant Officers are shielded from personal liability, but that Plaintiff presumably states a claim against the City of Palm Bay. *See Betterson v. Town of Cutler Bay*, No. 25-11638, 2026 WL 322952, at *4 (11th Cir. Feb. 6, 2026) (discussing section 768.28 and explaining that state officers, employees, and agents acting within the scope of their employment are shielded from personal liability unless they act in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property); *Gregory*, 719 Fed. App'x at 874 (holding that the plaintiff could not state a claim against the city where no version of the facts pled supported a claim that the officer acted without wanton and willful disregard of the plaintiff's rights); *Jones v. City of Palm Beach Gardens*, No. 16-81247-CIV, 2022 WL 2191689, at *2 (S.D. Fla. June 17, 2022) (noting that Florida has waived sovereign immunity for certain types of state-law tort actions but has retained it where employees act in bad faith or with

evidence." *Davis v. Miami-Dade Cnty.*, No. 23-12480, 2024 WL 4051215, at *4 (11th Cir. Sept. 5, 2024). Defendant Officers also note that Plaintiff had a pocketknife, insinuating that Plaintiff may have been a threat to their safety. (Dkt. 73 at 21.) Yet, based on the allegations in the operative complaint, Defendant Officers were not aware that Plaintiff had a knife until afterward. (*See* Dkt. 70 at 8; Dkt. 73 at 21.) Accordingly, because courts "do not use hindsight to judge the acts of police officers" but instead "look at what they knew (or reasonably should have known) at the time of the act," the court declines to consider this argument. *See Rodriguez*, 280 F.3d at 1352–53.

**2. False Arrest & Conversion**

Plaintiff brings claims for false arrest and conversion. (*See* Dkt. 70 at 20–23.) "In Florida, the tort of false arrest is defined as the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." *Jessup v. Miami-Dade Cnty.*, 440 F. App'x 689, 693 n.4 (11th Cir. 2011) (quotation omitted); *see Bartley v. Kim's Enter. of Orlando, Inc.*, 568 F. App'x 827, 833–34 (11th Cir. 2014) ("In Florida, the largely synonymous torts of false arrest, false detention, and false imprisonment are defined as the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty." (emphasis and quotation omitted)); *Deegan*

malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property and, in such cases, individual suits against employees are available, so plaintiffs tend to bring mutually exclusive claims against a governmental entity and its employees); *see also Percival v. Chronister*, No. 8:23-CV-01243-KKM-UAM, 2024 WL 1012976, at *7, *14 (M.D. Fla. Mar. 8, 2024) (permitting claims of battery against both the officers in their individual capacity and the sheriff in his official capacity to proceed at the motion to dismiss stage).

*v. City of Homestead*, No. 16-22820-CIV, 2017 WL 11497366, at *7 (S.D. Fla. Feb. 10, 2017) ("Under Florida law, a claim for false arrest has three elements: (1) an unlawful detention and deprivation of liberty against the plaintiff's will[,] (2) an unreasonable detention which is not warranted by the circumstances[,] and (3) an intentional detention." (alteration adopted)). Additionally, "[i]n Florida, conversion is defined as an act in derogation of a plaintiff's possessory rights, or any wrongful exercise or assumption of authority over another's goods which deprives him of possession, either permanently or for an indefinite time." *Christy v. Palm Beach Cnty. Sheriff*, No. 06-80805-CIV, 2006 WL 8449832, at *8 (S.D. Fla. Dec. 27, 2006); *accord Hathcock v. Cohen*, No. 05-60019-CIV, 2005 WL 8169376, at *9 (S.D. Fla. June 13, 2005); *see also Bloom v. Alvereze*, 498 F. App'x 867, 876 (11th Cir. 2012) ("[A] conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." (quotation omitted)).

Defendants once again argue that both claims should be dismissed for "fail[ure] to provide evidence that, if believed, would demonstrate the Defendant Officers acted in bad faith, malicious purpose or wanton and willful disregard for human rights." (Dkt. 73 at 22.)[5] As previously explained, "Plaintiff need not provide . . . evidence to survive a [m]otion to [d]ismiss." *See Hollywood Cmty. Synagogue, Inc. v. City of Hollywood*, 430 F. Supp. 2d 1296, 1326 (S.D. Fla. 2006); *see also Fisher v. Stewart Title*

---

[5] To the extent that Defendants contend that Plaintiff's false arrest claim should be dismissed because "Defendants possessed arguable probable cause for the arrest," the court disagrees. (Dkt. 73 at 22.) As already discussed, the court concludes that Defendants lacked arguable probable cause.

*Guar. Co*, No. 1:25-CV-01001-VMC-JEM, 2025 WL 2744567, at *4 (N.D. Ga. July 31, 2025) ("[A]t the motion to dismiss stage, a plaintiff is not required to prove [any] allegations through evidence, and courts must take all well-pleaded factual allegations as true."), *report and recommendation adopted by* 2025 WL 3305856, at *1 (N.D. Ga. Oct. 7, 2025). Further, Defendants fail to cite any legal authority to support dismissing these claims. (Dkt. 73 at 22.) *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (explaining that a party forfeits a position when they "cite[] no legal authority to support it").

**CONCLUSION**

Accordingly:

1. Defendants' motion to dismiss (Dkt. 73) is **GRANTED in part and DENIED in part** as follows:
    a. Count III of Plaintiff's complaint is **DISMISSED without prejudice** and with leave to amend.
    b. Counts IV and V of Plaintiff's complaint are **DISMISSED without prejudice** and without leave to amend. If the Eleventh Circuit concludes that a claim under the Takings Clause does exist, Plaintiff may move to amend the complaint as to count V.
    c. The motion is otherwise denied.

2. If Plaintiff wishes to submit a second amended complaint aimed at correcting the pleading deficiencies identified in this order, he shall do so on or before September 3, 2026.
3. Defendants shall answer the operative amended complaint (Dkt. 70) on or before September 4, 2026.

**ORDERED** in Orlando, Florida, on August 14, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record